In re Obie L.D. DUNLAP, Margaret F. Dunlap, t/a Ingram's Gardens, Debtor.

Obie L.D. DUNLAP, Margaret F. Dunlap, t/a Ingram's Gardens, Plaintiff,

v.

The CAMDEN FIRE INSURANCE ASSOCIATION and Golle Deegan Insurance Agency, Inc., Defendants.

Bankruptcy No. B–82–0959 C–13.
Adv. No. A–82–0578.

United States Bankruptcy Court,
M.D. North Carolina.

Feb. 9, 1983.

Donald Jeffrey Sherman, Anne Connally, Winston-Salem, N.C., for plaintiffs.

James C. Frenzel, Winston-Salem, N.C., for defendants.

## MEMORANDUM OPINION

RUFUS W. REYNOLDS, Bankruptcy Judge.

This is an adversary proceeding filed by the debtors, Margaret and Obie Dunlap. The issue before the Court is whether a writ of execution issued by the Camden Fire Insurance Association (hereinafter referred to as Camden) is a lien and continuing levy upon payments owing to the debtor from Golle and Deegan Insurance Agency, Inc. (hereinafter referred to as Golle and Deegan).

On February 17, 1979 Obie Dunlap, the plaintiff/debtor, (hereinafter referred to as Dunlap) entered a contract with Golle and Deegan for the sale of the Russell-Freeman Agency, Inc. to Golle and Deegan for the sum of $50,000.00. The contract provided for the $50,000.00 purchase price to be paid in 108 consecutive monthly installments of $462.96 beginning on May 10, 1979. The contract also provided in paragraph 13 that the purchase price was to be allocated and distributed as follows:

$15,000.00 of the purchase price is exclusively for the agreement by the seller not to compete as set forth above.

$10,000.00 of the purchase price is allocated for furniture and fixtures as set forth in Schedule B.

$25,000.00 of the purchase price is allocated to goodwill including the client list in Schedule A.

The allocation of purchase price, therefore, established that $15,000.00 of the $50,000.00, 30% of the total purchase price, was payment for an agreement not to compete. The terms of the agreement as set forth in paragraph 11 of the contract, provided that Obie and Margaret Dunlap would not "engage in any manner in soliciting those persons, firms or corporations, the list of which is set forth in "Schedule A" annexed hereto, for the purpose of selling any type of insurance whatsoever for the period of this agreement, which period shall expire on June 1, 1988".

On September 20, 1979 Camden filed suit against Dunlap to recover the sum of $26,981.34 on a contract of insurance. A default judgment was entered in the case on March 26, 1980 in favor of Camden for the sum of $26,981.34 plus $113.60 in costs. On April 23, 1980 a writ of execution was issued against all Dunlap's personal property and in particular against the monthly payment of $462.96 which Dunlap was receiving from Golle and Deegan. The writ of execution was served on Golle and Deegan and they in turn notified Dunlap that the monthly installment of $462.96 would thenceforth be paid to Camden. Dunlap did not have any prior notice of the application for the writ of execution and in fact had no notice of the writ of execution being issued until Golle and Deegan notified him.

On May 19, 1982 Dunlap filed a voluntary petition for relief under Chapter 13 of Title 11 of the U.S.C. The plan was confirmed on July 29, 1982. The issue at hand is whether the writ of execution of defendant Camden is valid and enforceable and therefore a continuing levy upon the monies owing to Obie Dunlap from Golle and Deegan. If the execution is not a valid lien and continuing levy, then the commissions paid by defendant Golle and Deegan are the property of plaintiff's Chapter 13 estate. There are basically three issues involved in this case. The first issue is whether the covenant not to compete, allocated as 30% of the purchase price in the contract for the sale of the Russell-Freeman Agency, Inc., is contingent and therefore 30% of the payments owing to Dunlap are not subject to execution. The second issue is whether New Jersey state law requires a 10% limitation on the amount of a debt which can be taken to satisfy a judgment. And the third issue is whether Camden in obtaining a writ of execution complied with all the procedural requirements under New Jersey state law.

■ With regard to issue one, the Court finds that Obie Dunlap does not have a vested right in 30% of the $462.96 monthly premiums in that 30% of the debt on which the premium is based is contingent upon Obie Dunlap not competing with Golle and Deegan. The written contract between Golle and Deegan and Dunlap specifically allocated $15,000.00 of the purchase price as being "exclusively for the agreement by the seller not to compete as set forth above". $15,000.00 is 30% of the total purchase price paid for the sale of the Russell-Freeman Agency, Inc. The agreement not to compete specifically provided that neither Obie nor Margaret Dunlap were to "engage in any manner in soliciting those persons, firms or corporations, a list of which is set forth in "Schedule A" annexed hereto for the purpose of selling any type of insurance whatsoever for the period of this agreement, which period shall expire on June 1, 1988". At any time from May 1979 to June 1988 that Obie Dunlap or his wife attempts to solicit any account sold to the Golle and Deegan Insurance Agency, Inc., they will violate the agreement not to compete and will no longer, therefore, be entitled to the balance of the $15,000.00 owing to them under the contract. Obie Dunlap's right to 30% of the purchase price is contingent upon his not competing with Golle and Deegan and is therefore not a vested right and is not subject to execution. The Court in *Cohen v. Cohen,* 126 N.J.L. 605, 20 A.2d 594 (1914) found that "rights and credits to be the subject of levy and execution must not only be liquidated ... but must also ... be certain, existing debts. A debt which is uncertain and contingent, in the sense that it may never become payable, is not subject to levy and sale ...". Camden, therefore, can not execute against 30% of the $462.96 monthly payment and the issue becomes whether Camden can execute against the remaining 70% of the monthly payment.

■ With regard to issue two, the Court finds the New Jersey execution statutes limit executions issued against the wages or debts of a judgment debtor to 10% of the income of the judgment debtor unless the income exceeds $7500.00 per annum. Articles 7 and 8 of N.J.S.A. 2A:17 provide for the execution against the wages, debts, earnings, salary, income or profits owing to a judgment debtor subject, however, to a

10% limitation. Under Article 7, the authorization for the execution is set forth in N.J.S.A. 2A:17–50 and the limitation on the amount specified in the execution is set forth in N.J.S.A. 2A:17–56. Under Article 8, the authorization as well as the percentage limitation is set forth in the same provision, N.J.S.A. 2A:17–57. The limitations on the amount specified in both N.J.S.A. 2A:17–56 and N.J.S.A. 2A:17–57 are "identical by virtue of the amendment to both sections made in 1970 by the same enactment. L.1970, c.297". *Household Finance Corporation v. Clevenger,* 141 N.J.Super. 53, 357 A.2d 279, 281 (A.D.1976). In their initial contact with the Court the defendant, Camden, claimed that they had filed for the writ of execution under Article 7. Later in their brief, the defendant, Camden, claimed that the writ of execution was issued pursuant to Article 8. Regardless of which Article the defendant filed under, the defendant's execution should have been limited to 10% of the judgment debtor's income unless that income exceeded $7500.00 per year. The 10% limitation under Article 7 is found in N.J.S.A. 2A:17–56 which reads as follows:

> In no case shall the *amount specified* (emphasis added) in an execution issued out of any Court against wages, debts, earnings, salary, income from trust funds or profits due and owing, or which may thereafter become due and owing to a judgment debtor, exceed *10%* (emphasis added) unless the income of such debtor shall exceed the sum of $7500.00 per annum in which case the Court out of which execution shall issue may order a larger percentage.

The 10% limitation under Article 8 is found in 2A:17–57 which provides as follows:

> ... wages, debts, earnings, salaries, income from trust funds and profits due and owing to a defendant in execution to the amount of less than $48 per week shall not be liable to be seized or taken by virtue of any execution, civil process or order directing payments to be made in installments. If they amount to $48 or more a week, not more than 10% thereof may be so seized or taken, unless they

exceed the sum of $7500.00 per annum, in which case the Court may order a larger percentage.

The 10% limitation is clearly established under both Article 7 and Article 8 of N.J. S.A. 2A:17 and the issue is simply whether the income of Dunlap in this case exceeded $7500.00.

In order to determine whether Dunlap's income at the time of the writ of execution exceeded $7500.00, the term "income" in N.J.S.A. 2A:17–56 and 2A:17–57 must be defined. The definition of "income" is clarified in the case of *Household Finance Corporation v. Clevenger,* 141 N.J.Super. 53, 357 A.2d 279 (A.D.1976). The execution in that case was issued against the wages of a judgment debtor pursuant to N.J.S.A. 2A:17–50 and the Court found that "the statutory scheme is to limit a wage execution to 10% of the debtor's wages, unless the *wages* (emphasis added) exceed $7500.00 a year ...". The wages of the judgment debtor were being executed against and therefore the wages of the judgment debtor had to exceed $7500.00 per annum before the Court could order an execution against more than 10%. In the case at hand, the execution was issued against a debt owed by Golle and Deegan to Dunlap and therefore the income from the debt must exceed $7500.00 per annum before the Court can execute against more than 10% of the debt. The monthly sum paid to the judgment debtor in this case is $462.96. The annual income from this debt is $5555.52 and falls within the $7500.00 per annum limitation. The writ of execution in the case, therefore, should have been limited to 10% of the monthly sum due and owing to the judgment debtor.

If this Court had chosen to define income as the total earnings of the judgment debtor, the judgment debtor's income in this case would still fall within the $7500.00 limitation. Dunlap's earnings for the year 1980 were established by his 1980 income tax return which was offered into evidence. The total earnings for the judgment debtor, Obie Dunlap, during the year 1980 were $2589.73 in interest income from Golle and

Deegan and $468.00 in unemployment compensation. Therefore, if the Court had defined income as total earnings, Dunlap's income would still fall within the $7500.00 per annum limitation and the execution would have to be limited to 10% of the monthly premiums.

With regard to issue three the Court finds that Camden failed to comply with the statutory requirements set forth in the New Jersey execution statutes and therefore Camden does not have a valid lien and continuing levy on even 10% of the $462.96 payable to Dunlap. Camden in their responsive brief states that they executed against Dunlap pursuant to N.J.S.A. 2A:17–63, which falls within Article 8 of 2A:17. The defendant, Camden, did not comply with the procedural requirements set forth in N.J.S.A. 2A:17–63. N.J.S.A. 2A:17–63 reads as follows:

> After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the Court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid the officer holding the execution or to the receiver appointed by the Court, either in one payment or in installments as the Court may deem just.

Notice is clearly required under the statute and the defendant, Camden, failed to give notice to the judgment debtor, Dunlap, or the garnishee, Golle and Deegan, prior to the writ of execution being issued. Camden, in their brief state that notice was given to Golle and Deegan after the writ of execution was entered. Camden also state in their brief that the only time that Dunlap, the judgment debtor, was notified of the writ of execution was when Golle and Deegan notified him that they would no longer be forwarding his $462.96 to him but rather were under order of the Court to forward it to Camden. The statute requires that the notice be given prior to the issuance of the writ of execution. Therefore, the requirements of N.J.S.A. 2A:17–63

have not been met and Camden's writ of execution, therefore, is not valid and is not a continuing levy upon the payments owing to Dunlap.

The defendant, Camden, claimed that the writ of execution was a valid lien and continuing levy upon the payments made by Golle and Deegan. However the only language as to a writ of execution being a continuing levy and lien upon wages is found in Article 7 of Chapter 17. Article 8, under which the writ of execution in this case was entered does not make reference to the writ being a continuing levy and lien. Therefore, even if, Camden had met the procedural requirements of 2A:17–63, the writ of execution would not have been a continuing levy and lien upon the debt owing to Dunlap by Golle and Deegan.

Pursuant to the writ of execution, which is hereby declared unenforceable, defendant, Golle and Deegan Insurance Agency, Inc., forwarded to the defendant, Camden Fire Insurance Association, monthly commission payments in the approximate amount of $462.96 during the 90 day period from February 20, 1982 until May 19, 1982, the date on which the plaintiffs filed a Chapter 13 petition.

Based upon the foregoing findings the Court concludes as follows:

1. That only 70% of the $462.96, which is $324.08, was subject to execution;

2. That the New Jersey statutes clearly set forth a 10% limitation unless the income of the debtor exceeds $7500.00 and in this case the judgment debtor's income did not exceed $7500.00 and the 10% limitation should have been applied;

3. That Camden failed to comply with the procedural requirements for execution and therefore Camden does not have a valid lien on even $32.41 per month (10% of the $324.08 monthly payments subject to execution);

4. That the monthly commissions of $462.96 paid by defendant, Golle and Deegan Insurance Agency, Inc., are the property of plaintiff's Chapter 13 estate;

5. That in that the writ of execution is hereby found to be unenforceable, the commissions paid by Golle and Deegan Insurance Agency to Camden Fire from February 20, 1982 until May 19, 1982 constitute a preference pursuant to 11 U.S.C. § 547.

Let an order be entered accordingly.